Thank you and good morning again. Judge Beezer I was here yesterday morning as well. Good morning. My name is Tracy Staub and I'm here on behalf of my client Mr. Nava-Anaya. I would like to reserve three minutes for rebuttal but we'll see how that goes. There are three issues in the case, a confrontation issue regarding a limitation on prior juvenile adjudications. There is a conflict of counsel right to counsel issue that is what I consider to be rather messed up in the sense that it combines a whole bunch of issues going on. And then there's a sentencing issue. Just to recap the defendant in this case, the government had a confidential informant, a CI, that conducted five drug and gun related transactions with a 19-year-old Roy Saldana. Mr. Nava-Anaya was present for three of those five transactions and the issue at trial was whether he was merely present or was actually participating in them. The government to prove its case against Mr. Nava-Anaya offered the testimony of the confidential informant and Mr. Saldana who had now turned government witness. And so the testimony of these two witnesses is crucial for this case and the first two issues relate particularly to these two witnesses. So they were both percipient witnesses, one of whom was the testifying co-defendant? That's correct, yeah. The first issue that I raised in my briefs was the confrontation issue but I'm prepared to address any issue that the court would like me to focus on. The confrontation issue surrounds the district court's limitation of Mr. Nava-Anaya's trial counsel in cross-examining Mr. Saldana on his prior juvenile adjudications. And as I mentioned, Mr. Saldana was just 19 years old, had an extensive juvenile record but no adult record except for the current conviction. So the juvenile adjudications were important to provide the jury with a full picture of this young man's history. I think it's up to the nature and scope of the actual cross-examination to determine whether there's a reversible error here. Is the court asking me, are we jumping straight to the harmless error analysis? Is that what you're asking me? Right. Well, you know, this is not a Crawford confrontation issue. No, it's not. It's a limitation but it's still a Sixth Amendment. I understand it's a Sixth Amendment. But what I'm asking you is the degree to which your client was prejudiced by not being able to expose the full range of this witness's history. Okay. So then, if on the, as it played out, Saldana was extensively cross-examined, we do look at that, don't we? Yes, assuming that the court applies a harmless error analysis. And I think that it does, although Gonzales-Lopez, which is the recent Supreme Court decision on the Sixth Amendment confrontation, or not confrontation, it toyed with confrontation, but it also talked about the right to choice of counsel. It was clear that Justice Scalia indicated that at least the right to counsel Sixth Amendment confrontation was a structural error, not a harmless error. I still think that harmless error analysis would apply to confrontation issues. They haven't really decided that issue one way or the other recently. But assuming that it does, then the government's burden is to prove that the error was harmless beyond a reasonable doubt. And the government really makes no harmless error analysis in its briefs whatsoever. Going back to the issue, there's a three-part test that this court has employed. And I think that what the government does in this case is jump straight to the third issue to show that there was no prejudice, and basically skips over the first two issues or factors. And I think that those first two factors are relatively important. And it's error to go straight to the third factor without addressing the first two factors. The first one – But don't the first two factors establish the confrontation clause violation? Yes, they do. So then we have to determine, as you've already told us, whether or not the violation was harmless error. Well, if the third factor is considered to be the harmless error analysis, I would tend to agree with you to some respect. Although it's not phrased necessarily the same, and it certainly doesn't indicate that it's the government's burden to prove beyond a reasonable doubt. But I do agree that the first two factors show that – But a reasonable doubt applies to the effect of the violation, does it not? As would establish the violation. Correct. Correct. Okay. So if the first two problems are met, then the violation is complete. So then we look at what was the effect of the violation, and that gets back to Judge Fischer's question, is don't we look to the actual cross-examination conducted by his then-trial counsel and determine whether or not the violation was prejudicial? Right. And the problem that I have, I think, with the government's argument in this case, is it seems to fall back on an argument that is similar to Ohio v. Roberts, which is that the witness in this case – that the government – or that the defense attorney was able to effectively cross-examine this witness on other factors, and therefore no harm, no foul. Well, there is a difference, is there not, between this case and Davis v. Alaska in that if we're looking at the jury's ability to determine bias and motive of the testifying witness, in Davis the only evidence was the knowledge that Davis was still on juvenile supervision and therefore might be attempting to better his position in the eyes of his probation officer, and the jury didn't know that. Whereas here, the jury was told, by cross-examination, a substantial amount of information to assess his credibility with regard to the agreement and how much he was paid and that he was working for them, that sort of thing, right? That is correct, Your Honor, to a certain extent, although recently in Horton v. Alaska, the witness is central to the prosecution's case. The defendant's conviction demonstrates that the impeachment evidence presented at trial likely did not suffice to convince the jury that the witness lacked credibility. Well, the district courts seem to think that the evidence rule on what convictions are admissible for impeachment also was relevant. Do you agree that we look to ER – what is it – 609D? 609D. No, Your Honor. And specifically, the notes in that case say that the trial is subject to the impeachment of its own witness on prior convictions only when the government is able to point to a real danger of prejudice. I don't think that answers my question. I'm sorry. Doesn't 609D talk about the kinds of convictions that are admissible for purposes of impeachment? 609D talks about juvenile adjudications. And it basically precludes the admission into evidence of a juvenile adjudication except – subject to certain exceptions, right? Yes, I agree. But I don't think that we can take the evidence rule and elevate it above the confrontation right. And I think that in – particularly in these circumstances where it's the government's witness, then that adds an additional layer of – Suppose the witness had been an adult. What would your position have been with regard to the admissibility of adult convictions for the same offenses? Which crimes could have been inquired into on cross-examination? Well, particularly the burglary offenses. And – And on what theory would that be? Well, they were felonies. Okay. So I think that they would come – You're not contending that they go to credibility or they're crimes of moral turpitude? No. However, the underlying facts about his being a drug taxer and that kind of thing. But I do believe that was allowed in. I have a minute and – Why don't you take a minute to say what you wanted to say, to set the table on the conflict. And then we'll give you some time. Okay. I'll give you some time when we're done. The conflict is a two-part issue that I raised in this case. One being the abuse of discretion in the trial judges denying Mr. Nava and Naya's motion to disqualify his current attorney, which was never taken off the table. And the other is the constitutional issue. I think that just going through the way that appeals are done, obviously if the court can reach the issue on the abuse of discretion, it doesn't have to get to the confrontation issue. The problem that we have in this case is we have retained counsel of choice who the defendant believes has a conflict and wants to fire. So you've got kind of the three different counsel issues melded together here. In Gonzalez-Lopez, the court says it's structural. Is it clear that he wanted to fire him? At one point he says, I don't have a choice. And the district court, instead of telling him, well, here's what the problems that may arise with successive representation, just basically drilled him and said, well, if you can't come up with anything, then I'm not going to fire the attorney. Well, it's not Mr. Nava and Naya's job to come up with something. He's supposed to be advised. We've got a factual finding that there was no conflict after the appointment of independent counsel to advise Mr. Nava and Naya on that issue. We've got a factual finding that no conflict existed because he hadn't actually conveyed any confidential communications due to the limited nature of the prior engagement. And I would suggest that that's a mixed question, just because what happened would be a factual issue, the legal consequences of what happened. Okay, but the factual finding is that there was no confidential communication transmitted. So we'd have to find that to be clear error before we could conclude that the district court erred as a matter of law in determining there was no conflict of interest. And that would go to the constitutional issue or the abuse of discretion? No, no, no. I'm trying to figure out whether there was a conflict. And the fact that I read the transcript found pretty clearly, as I read it, that there was no conflict. A, there was no confidential communication. B, independent counsel appointed to inquire specifically into that issue so that he could have privileged communications that the district court wasn't supposed to hear assured him that he saw no conflict. And in the face of that factual finding, isn't that fatal to claim that there was reversible error here for not appointing him? I don't think so, because I don't think that, if you look to the three-part test in the abuse of discretion, the third factor in that is not that there has to be an actual conflict. The conflict has to be between the client and his lawyer and Mr. Inaba and Naya's trust and faith in his own lawyer. And the court never got to that, because it just found, well, there's no conflict, we're moving on. It never got to that third factor. It didn't do the inquiry. And nobody talked to Mr. Navarro, the confidential informant. And as I showed in the brief, during cross-examination, Mr. Navarro said, well, my lawyer told me not to plead guilty. I thought the prosecutor made a representation to the district court that he'd spoken to the informant, and the informant had no objection to trial counsel remaining. And that may be true, but did anybody ask the confidential informant, what do you remember about your communications with Mr. Therian? Because Mr. Therian may have had communication... Does it matter, counsel, if the client says, I don't object to having the defense lawyer represent the defendant at the trial where I'm going to testify against him? He's essentially waived the attorney-client... One part has, yes. That part has, yes. But he's not on trial. No, I'm not. Never did. I'm way over my time, but thank you. Thank you. Morning. Good morning. My name is James Taggarty. I am an assistant United States attorney in the Eastern District of Washington. I'm both the writer of the government's response and the trial attorney in this case. And I want to the first thing was, is the court is correct that with respect to the confidential informant, the government did speak to the confidential informant. I personally spoke to the confidential informant, and basically what he said was, I don't even remember this guy. Well, that may be, but that's only half of the equation. The issue is that Mr. Therrien is a civil witness's attorney representing him. And the question is whether the defendant on trial is faced with a situation where he doesn't feel like his interests are being represented. It may be fine for the... The question in this case is not... ...to waive the conflict, but that's only half the issue. I understand. But in this case is nothing that Mr. Therrien did. Mr. Therrien could not even remember this person because he went to a detention hearing. He went to arraignment, and then the defendant in that case, Mr. Navarro, hired his own lawyer. That lawyer takes all of the discovery, does this and works out this arrangement. Mr. Therrien did nothing. Mr. Therrien received no information. In fact, I think the record is clear that Mr. Therrien saw his client two times, once at a detention hearing and once at arraignment. And that was it. And had no other independent conversations or meetings with Mr. Navarro. Was Mr. Therrien the person, the lawyer that the counsel quoted... Was it Navarro? Was that the fellow saying, my lawyer told me to plead or... No, that was Mr. Garrison. That was the later counsel. That was the lawyer who worked it out. Yes. Okay. But I think the thing is, is that there's an assumption on the part of the Helen in this case, that Mr. Navarro had come and approached the court and said, I have a conflict with my lawyer. I think a careful review of the transcript indicates that what Mr. Navarro indicated was, is I don't know what to do. I know about this. I paid Mr. Therrien all this money. I have no lawyer, if there is. And then Mr. Therrien clarifies it and says that the motion I filed on behalf of Mr. Navarro is really a motion for him to have independent counsel so he can speak to independent counsel as to the way to approach this. He got what he asked for. He got independent counsel. Independent counsel announced, I've talked to Mr. Navarro. I have reviewed Mr. Therrien's file. As a result of that, there is no conflict. That in accordance with the conflict rules, there is no conflict. At that point in time, Mr. Navarro and I, in a reading of the transcript, is Mr. Navarro and I never really steps forward and says anything about his position other than, I don't know what to do. That's it. The judge decides there is no conflict. Now, being that there's no conflict, Mr. Navarro and I doesn't have that situation where he is stuck with counsel. He can get another counsel and this side issue, and I think it's really like a red herring issue, is the money issue because during that, the district court says, I'll appoint you counsel. You can't afford one and there is a conflict. I'll appoint you counsel. So Mr. Navarro and I had that option available to him. I think in this case, the problem we have is there was no conflict. So all of the attack on this by the appellant doesn't get anywhere because the fact is there is no conflict. And I think the district court clearly gave him every opportunity and did everything necessary to see if there was a conflict. And as always is the case, 10 minutes is never enough for an attorney to give everything that we wanna say, but... That's why you get to the other issue, but... And we'll give you 14,000 words. Yes. I think in the argument about the issue of whether the Sixth Amendment was violated when the district court prevented cross examination, in that case, we... I think the interesting issue is that when asked why, if it as an adult, these convictions would come in, the answer was it's because they're felonies, which I think is an answer which doesn't reflect the reality of the trial practice. Because as a general rule, the district court does not permit the government to present in cross examination felony convictions. There has to be some relevance, there has to be some other overriding factor which allows the district court to bring that in. Are you telling us about a practice in the Eastern District of Washington? Yes. That this is... With this particular judge? Because clearly, a felony, if it's not more than 10 years old, is admissible for purposes of impeachment. I would say every five years, it is very unlikely in the Eastern District of Washington out of Yakima that a felony would just come in because it is a felony. So what do we do with that? You want us to write an opinion that says that this opinion only applies to the other 14 districts? No. See, that's what happens when you get Western District judges over here on the panel. No, I'm just pointing out that to just say it is a felony, so it comes in, I don't think there is an analysis to this. We also have to remember, it has to be probative. It has to be probative of the issue. Just to say it's gonna come in because it's a felony, I don't think everything comes in. Well, but that's not what the rule says with regard to juvenile felonies. The rule says there's an even more with regard to juvenile. And my point was, is we're not gonna let in just any felony that comes in as an adult. So now, we do this analysis, we look at whether we're going to bring in as an adult, we step back and go to the juvenile and say, okay, we're even gonna be more selective about what we allow. In this case, it's interesting that the argument is being made that Mr. Saldana has an extensive juvenile conviction history and that we really need to understand and bring that in. If you read the transcript, the defendant's criminal history or the transcript, the defendant has a criminal history which is twice that of Mr. Saldana as a juvenile. He has an adult. What's that got to do with it? Well, I'm saying is what she says... The issue is whether or not the witness is being called. And then rule 609D says juvenile convictions are generally not admissible. But in the case of a witness, it points out that there's an exception to that and just admonishes the court to say to be satisfied that admission and evidence is necessary for a fair determination of the issue of guilt or innocence. And that is correct. And that's what this district... So what has that got to do with whether the defendant has a bigger record than the witness? Well, because the argument is being made that he has this extensive juvenile history, so it has to come in. Well, that's right, to impeach him, to make him look out to weaken his credibility as a witness. That's the whole point of it. But the rule is not whether he has an extensive one or whether he has one. It is, does the history... Is it necessary for fair determination of this? But their argument is that it is... I don't understand what the defendant's juvenile record has to do with anything. I'm just pointing out that we use the term... The appellate is using the term that he has an extensive history to make an argument that that had to come in. Well, that's not right. That's not the analysis, isn't whether it is. And the district... Why not? Because... Well, does it make a difference if he has 27 juvenile convictions? Of those, 15 of them were at 12 years old, and he's now 19 years old? Well, maybe so. It depends. That's what the judge has to focus on. It has nothing to do with whether or not the defendant has a juvenile record. The question is whether or not the witness's juvenile record, in light of his role as a witness against the defendant, may well be probative of his credibility. Correct. And whether it would be fair or not to have it... His role as a gang collector, a gang enforcer, that's what they were arguing. They needed to get that in front of the jury, so they could hear that evidence. But they got that evidence in. And that's a different issue. Then you're saying it's not harmful then. They got that evidence in. What they're arguing is because he has this extensive history. Well, he doesn't have an extensive history, and it wasn't necessary because the fact is, there was so much other information that was brought in about him that dealt with the real issues, and that was the other issues about being convicted of a residential burglary. That's merely... That's supposed to be credibility, but what does it have to do if you're involved in a conspiracy to deliver? And that's what the district court was saying, was it doesn't have any relevancy to that. It doesn't have any probative effect, and it's not necessary. Are you arguing that it was not an abuse of discretion in this case because of all that other evidence to exclude it? Correct. Is that what you're saying? Yeah, that the judge did a reasoned analysis of his criminal history, all the other evidence, and found this will not help the jury as to the issue of credibility. It's not relevant to the issue of truthfulness. And that truthfulness, he let in. And am I correct in understanding that he was not then under any further supervision on any of those prior juvenile adjudications, as was the case with the Alaskans versus Alaska? My understanding is that Mr. Saldana was not under any supervision whatsoever. Okay, thank you very much. I'll give you a minute for rebuttal. Just a minute though, because I think we have the case pretty well in mind. I understand. I did point out, Judge Tallman, in my reply brief, that it's possible that Mr. Saldana could have been under supervision, considering the dates of his conviction and the time limit for that, just for the... But we don't know on the record... We don't know. One way or the other. Because he wasn't allowed to cross examine him on that. Okay. Okay. Thank you both. Appreciate the argument. Case argued is submitted.
judges: Beezer, Fisher, Tallman